**In re Dale Stephen KOOKER, Debtor.**

**Bankruptcy No. BK–S–88–01783–RCJ.**

United States Bankruptcy Court,
D. Nevada.

Jan. 12, 1989.

**234**

Terry V. Leavitt, Las Vegas, Nev., for debtor.

Matthew Q. Callister, Las Vegas, Nev., for Bank of America, NT & SA, its assignees and/or successors in interest.

## MEMORANDUM OPINION

ROBERT CLIVE JONES, Chief Judge.

A Confirmation Hearing on the Debtor's Proposed Chapter 13 Plan was held on September 19, 1988. At that hearing BANK OF AMERICA ("Creditor") objected to the Debtor's Proposed Chapter 13 Plan as it does not provide for interest to be paid on mortgage arrearages cured under the plan. The mortgage arrearages in question are on the Debtor's residence. The Court requested the parties file points and authorities and took the matter under advisement.

The Creditor argues that as it is entitled to receive the present value of its money pursuant to Bankruptcy Code § 1325, it must receive interest on those arrearages cured under the plan. However, the Debtor contends that under § 1322(b) the plan need not require interest to be paid when the arrearages cured are on a debtor's residence.

The issue in this case, known as the "interest on interest" or "interest on arrears" issue is "hotly contested in bankruptcy courts in various jurisdictions. Resolution of this issue requires a determination of the interplay between" both § 1325(a)(5)(B) and § 1322(b). *In re Fries,* 68 B.R. 676, 681 (Bankr.E.D.Pa.1986).

According to § 1325(a)(5)(B)(ii), a creditor who does not accept the plan or receive the collateral securing its claim must receive the present value of the allowed amount of its claim, as of the effective date of the plan. 11 U.S.C. § 1325(a)(5)(B)(ii) (1987).[1] The Creditor relies upon this code section as support for its assertion that it is entitled to receive interest on those arrearages cured by the Chapter 13 Plan, even though the mortgage contract contains no provision for such interest.

Section 1322 provides guidance on the issue of the extent to which a plan may impair a creditor's claim. Sections 1322(b)(2) and 1322(b)(5) provide:

Subject to subsections (a) and (c) of this section, the plan may—

\*   \*   \*   \*   \*   \*

(2) modify the rights of the holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

\*   \*   \*   \*   \*   \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured

---

1. Section 1325(a)(5)(B)(ii) provides that the Court shall confirm a plan if:
    (5) with respect to each allowed secured claim provided for by the plan—
    \*   \*   \*   \*   \*   \*
    (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account if such claim is not less than the allowed amount of such claim ...
11 U.S.C. § 1325(a)(5)(B) (1987).

claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

11 U.S.C. § 1322(b)(2) and (b)(5) (1985) (emphasis added).

The Ninth Circuit has not ruled on the interest on arrears issue. Those circuits that have addressed this issue have arrived at conflicting results. The two circuit courts of appeal opinions most often cited for authority are *In re Colegrove,* 771 F.2d 119 (6th Cir.1985), and *In re Terry,* 780 F.2d 894 (11th Cir.1986). In *Colegrove,* the Sixth Circuit held that § 1325(a)(5)(B)(ii) requires interest to be paid on mortgage arrearages cured under the plan. The court concluded that the creditor must be paid interest on arrearages if it is to receive the "present value" of its money pursuant to § 1325.

In contrast, the *Terry* court held that when a debtor seeks to cure a default and reinstate the mortgage on his residence, a secured creditor with a security interest in that residence is not entitled to interest on arrearages, unless the mortgage contract provides for such interest. *Terry,* 780 F.2d at 895. The court concluded that § 1322(b) creates an exception to § 1325(a) for home mortgage arrearages and thus, in that context § 1325(a)(5)(B)(ii) interest is inapplicable.

In addition, the Third Circuit Court of Appeals has reviewed this issue. That court also concluded that "because cure under § 1322(b)(5) does not modify creditors' rights ... [interest under] § 1325(a)(5)(B)(ii) is inapplicable in the context of cure and reinstatement." *In re Capps* 836 F.2d 773, 776 (3rd Cir.1987). Like *Terry,* the *Capps* court ultimately held that § 1322(b)(5) contemplates cure in accordance with the contractual terms. *Id.* at 776. The *Capps* court also held that because "home mortgages were not the

intended beneficiaries of § 1325(a)(5)(B)(ii) and because their treatment, insofar as cures of defaults are concerned, is dictated by the specific provisions of § 1322(b)," the mortgagee is not entitled to interest on arrearages. *Id.* The court reasoned that home mortgage holders are not the intended beneficiaries of § 1325 because their debts, unlike other creditors' debts, may not be modified by the debtor.

The Debtor asserts that when Congress provided the benefit of cure to mortgage holders, it also created a right in debtors to depend upon the terms of the original contract, which in most cases does not mandate interest on arrearages. As support for its position, the Debtor relies upon the same analysis found in both *Terry* and *Capps.* The Debtor's arguments are persuasive.

Unlike *Colegrove,*[2] the *Terry* court recognized that § 1322(b)(2) was intended to create a special exception to a creditor's ability to recover interest under § 1325(a)(5)(B). Section 1322(b) furnishes favorable treatment to creditors by providing that debts secured by the debtor's home may not be modified, and by allowing the debtor to cure mortgage defaults under the plan. 11 U.S.C. § 1322(b)(2) and (b)(3). Unlike other creditors, the mortgage creditor enjoys a favored position under the Code since it is able to fully realize the agreement it entered into with the debtor.

Additionally, § 1325(a) is a "cramdown" provision in that it prescribes the conditions under which a plan may be confirmed despite creditors' objections. Section 1325 limits the effects of cramdown to creditors by assuring them the present value of their money. *Capps,* 836 F.2d at 776. The allowance of present value interest is necessary because cramdown allows a debtor to "modify the rights of secured creditors by reducing their payments in other ways." *Id.* citing 5 *Collier on Bankruptcy* ¶ 1322.09[4] (15th ed. 1986).

---

**2.** The *Colegrove* decision assumes that the creditor receives interest on interest accrued as part of its allowed claim. However, we note in passing that § 506(b) requires that the holder of an allowed secured claim be granted interest on such claim together with reasonable fees, costs and charges provided under the agreement. It

does not state that interest and other charges are part of the allowed secured claim. *See, e.g.,* 11 U.S.C. § 502(b)(2). Consequently, the § 1325 requirement of present value for the "allowed amount of such claim" may not be applicable to accrued interest, attorney's fees or other charges.

Cure and reinstatement, however, do not modify creditors' rights. As noted by *Collier*:

Where a default is cured, however, the creditor's rights are not modified. Since the contract terms remain in force (except for the injunction against foreclosure) the time value of money is irrelevant. The creditor receives the interest, charges and costs to which it is entitled under the contract and applicable non-bankruptcy law.

5 *Collier* ¶ 1322.09[4].

Therefore, § 1325(a)(5)(B) is for the benefit of the creditor whose rights are modified under the plan or whose collateral is subject to depreciation. No such situation exists in the present case. Rather, through cure and reinstatement, the creditor is scheduled to receive the payments provided in its contract.

Ironically, allowing § 1325(a)(5)(B)(ii) interest on arrearages would clearly modify the contract between the Creditor and Debtor in contravention of § 1322(b)(2). *Colegrove*, 771 F.2d at 124 (Celebrezze, J., dissenting). Finally, it should be noted that the payment of interest on interest is rarely, if ever, directly available to a creditor outside bankruptcy. *In re Catlin*, 81 B.R. 522, 526 (Bankr.D.Minn.1987).

This Court holds that § 1322 provides the Creditor with the benefit of what it bargained for, and that because of this favorable treatment, § 1325 interest is inapplicable in the case of cured residential mortgage arrearages.[3] Thus, this Court declines to adopt a present value analysis which would allow the creditor to receive the "windfall" of interest on arrearages cured under the plan. In accordance with this Memorandum Decision, an order will be entered denying the Creditor's Objection to the Debtor's Proposed Chapter 13 Plan.

---

**3.** We further note that this disposition provides symmetry to the interpretation of the Bankruptcy Code. The interpretation adopted today is in accord with those decisions which disallow interest on interest under 11 U.S.C. § 1124. *See,*

*e.g., In re Madison Hotel Associates*, 749 F.2d 410 (7th Cir.1984); *In re Arlington Village Partners, Ltd.*, 66 B.R. 308 (Bankr.S.D.Ohio 1986); *In re Forest Hills Associates*, 40 B.R. 410, 415 (Bankr. S.D.N.Y.1984).