**In re 268 LIMITED, a Nevada limited partnership, Debtor.**

**JOSEPH F. SANSON INVESTMENT COMPANY, Appellant,**

v.

**268 LIMITED; Trustee in Bankruptcy, Appellees.**

No. 88–2612.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 1989.

Decided June 14, 1989.

Gerald M. Gordon, and Candace C. Carlyon, Waldman, Gordon & Silver, Ltd., Las Vegas, Nev., for the appellant.

Joshua M. Landish, Las Vegas, Nev., for appellees.

Leonard A. Wilson, Las Vegas, Nev., for trustee.

**ORDER CERTIFYING QUESTION OF LAW TO NEVADA SUPREME COURT**

Before NORRIS, BEEZER, and BRUNETTI, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge.

**QUESTION CERTIFIED TO NEVADA SUPREME COURT**

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure we certify the following question of law to the Nevada Supreme Court:

Does Nevada Revised Statute § 107.030(7) permit parties to a deed of trust to recover stipulated attorney's fees without regard to the reasonableness of the fee?

**FACTS AND PROCEEDINGS BELOW**

Joseph Sanson Investment Co. ("Sanson") sold a Las Vegas apartment complex to 268 Limited, a Nevada limited partnership, and retained a security interest in the

property, evidenced by a promissory note and first lien deed of trust. The Sanson deed of trust incorporated by reference section 107.030(7) of the Nevada Revised Statutes (NRS) regarding attorney's fees in the event of default, and designated five percent of the secured amount as the attorney's fee.

286 Limited's general partner filed a Chapter 11 petition in bankruptcy, and 286 Limited subsequently defaulted on the obligation to Sanson. The complex was sold, netting a sum substantially in excess of the $3,957,000 that was owed on the note. Sanson was billed $13,732 by its counsel for services related to 268 Limited. *Matter of 268 Ltd.*, 789 F.2d 674, 677 (9th Cir. 1986). Sanson then applied to the bankruptcy court for attorney's fees in the amount of $197,500 pursuant to the clause in the deed of trust.

The bankruptcy court found the requested amount to be unreasonable and awarded Sanson $20,000 pursuant to section 506(b) of the Bankruptcy Code, 11 U.S.C. This court affirmed, holding that section 506(b) preempts state law governing the availability of attorney's fees as a secured claim. *Id.* at 675–77 (characterizing the award as "generous, particularly in light of the quality of legal work performed"). We remanded the case to allow Sanson to attempt to recover the balance of the $197,500 as an unsecured creditor, expressing "no opinion on the enforceability under the governing state law of the deed of trust's attorney's fees provision." *Id.* at 678.

On remand the bankruptcy court again denied Sanson's $177,500 claim, holding that NRS 107.030(7) limits attorney's fees in a deed of trust to a reasonable amount and that Sanson had already been awarded a reasonable attorney's fee ($20,000). 75 B.R. 37. The Bankruptcy Appellate Panel affirmed, 85 B.R. 101, holding that NRS 107.030(7) limits recovery to reasonable attorney's fees, that the stipulated percentage should be construed as the maximum possible recovery, and that the excess cannot be recovered as an unsecured claim. Sanson appeals.

## STANDARD OF REVIEW

The Bankruptcy Appellate Panel's conclusions of law are reviewed de novo. *In re Burley,* 738 F.2d 981, 986 (9th Cir. 1984).

## DISCUSSION

NRS 107.030(7) is a covenant that is available to parties to a deed of trust that may be incorporated as a stipulation for attorney's fees in the event of default. Its incorporation is not mandated by the legislature. NRS 107.030 begins, "Every deed of trust made after March 29, 1927 may adopt by reference all or any of the following covenants...." NRS 107.030(7) provides:

That the trustee, upon such sale, shall make (without warranty), execute and, after due payment made, deliver to purchaser or purchasers, his or their heirs or assigns, a deed or deeds of the premises so sold which shall convey to the purchaser all the title of the grantor in the trust premises, and shall apply the proceeds of the sale thereof in payment, firstly, of the expenses of such sale, together with the reasonable expenses of the trust, including counsel fees, in an amount equal to —— percent of the amount secured thereby and remaining unpaid, which shall become due upon any default made by grantor in any of the payments aforesaid; and also such sums, if any, as trustee or beneficiary shall have paid, for procuring a search of the title to the premises, or any part thereof, subsequent to the execution of the deed of trust; and in payment, secondly, of the obligation or debts secured, and interest thereon then remaining unpaid, and the amount of all other moneys with interest therein herein agreed or provided to be paid by grantor; and the balance or surplus of such proceeds of sale it shall pay to grantor, his heirs, executors, administrators or assigns.

Although there is no Nevada case law construing this particular provision, there are pre-section 107 Nevada opinions addressing attorney's fees in mortgage foreclosures,

but we are unable to determine whether they are in conflict with NRS 107.030(7).

*Cox v. Smith,* 1 Nev. 161 (1865), and *McLane v. Abrams,* 2 Nev. 199 (1866) involved promissory notes in mortgages providing that, upon foreclosure, the creditor would recover ten percent of the unpaid balance as attorney's fees.[1] In both cases the fees sought were allowed, but the Nevada Supreme Court indicated that contractual stipulations notwithstanding, only reasonable fees would be allowed. *See Cox,* 1 Nev. at 172 ("[I]f unreasonable counsel fees were allowed [in the contract], the court would interpose its authority to protect the mortgagor."); *McLane,* 2 Nev. at 208 ("[I]n all cases where attorneys' fees are provided for in instruments of this character, only a reasonable sum should be allowed. The entire sum stipulated should not be allowed to parties where it would be an exorbitant or unreasonable fee.").

These early cases establish that prior to the enactment of NRS 107.030(7) stipulated attorney's fees provisions in mortgage instruments were subject to a judicial determination of reasonableness. It is not clear to us, however, whether the holdings of *Cox* and *McLane* have been modified by NRS 107.030(7) which allows the trustee to pay the expenses of the trust including attorneys fees in a stipulated amount. For this reason we find it appropriate to certify this question to the Nevada Supreme Court.

CONCLUSION

The question herein certified may be determinative of the matter pending before this court, and it appears that there is no controlling precedent in the decisions of the Nevada Supreme Court. Accordingly, we request the Nevada Supreme Court to accept and decide this question. If the Nevada Supreme Court deems the issue presented by this case to be inappropriate for

certification we will resolve it according to our perception of Nevada law. *See Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th Cir.1986) ("Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it."). The Clerk will file a certified copy of this Order in accordance with Rule 5 of the Nevada Rules of Appellate Procedure. This panel retains jurisdiction over further proceedings in this court.

So ordered.

---

1. The *Cox* note contained an attorneys fees provision similar in thrust to NRS 107.030(7). It provided: "in case ... [a] holder hereof shall commence a suit to enforce [the note obligation], then it shall be lawful for the said payee or the holder hereof to have and demand upon the same ten (10) per cent, upon the amount which shall be recovered thereon as a reason-

able indemnity for attorney and counsel fees...." 1 Nev. at 165. The *McLane* note provided that if suit was brought to collect money due under the note that the makers promised "[t]o pay the further sum of ten per cent, upon the whole sum due and unpaid for attorney's fees...." 2 Nev. at 203.